Bayan ELASHI, Petitioner,

v.

Mary E. SABOL, et al., Respondents.

No. 4:CV–09–2201.

United States District Court, M.D. Pennsylvania.

March 18, 2010.

Elizabeth A. Badger, World Organization for Human Rights USA, Washington, DC, Megan Bremer, York, PA, Susan Akram, Boston University Civil Litigation Program, Boston, MA, for Petitioner.

Jennifer A. Bowen, U.S. Dept. of Justice Office of Immigration Litigation, Washington, DC, Mark Morrison, U.S. Attorney's Office, Harrisburg, PA, for Respondents.

### ORDER

MALCOLM MUIR, District Judge.

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

On November 9, 2009, Bayan Elashi, a native of Gaza currently detained in the custody of the Bureau of Immigration & Customs Enforcement, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. He is being detained at the York County Prison in York, Pennsylvania. A final order of deportation has been issued against him and he is not challenging the validity of that order. In this case Elashi claims that his continued detention is in violation of his constitutional rights and the relief sought is limited to his release from custody pending his removal from this country.

On December 11, 2009, a rule to show cause was issued. After being granted a one-week extension of time in which to do so, on January 7, 2010, the Respondents filed their brief in response to Elashi's petition. Elashi filed his reply brief on January 22, 2010.

At that point we did not view Elashi's petition to be ripe for disposition because it was conceivable that 8 C.F.R. § 241.14, a regulation not discussed by either party, was relevant to our disposition of this case. We believed that 8 C.F.R. § 241.14 may apply in this case because the brief filed by the Government was laced with overtones to the effect that Elashi's continued detention was justified because of national security or terrorism concerns. By order dated January 25, 2010, we required the Government to file a brief addressing the issue of whether 8 C.F.R. § 241.14 applies in this case.

The Government filed its brief in response to that order on February 16, 2010. In that brief the "Respondents respectfully decline to invoke this regulation. Respondents request that the Court consider their [initial responsive brief] without reference to 8 C.F.R. § 241.14." (Government's Supplemental Briefing Pursuant to the Court's January 25, 2010, Order, p. 2)

Elashi filed his responsive brief on March 1, 2010. The time allowed for the Respondents to file a reply brief expired on March 14, 2010, and to this date no such brief has been filed. Elashi's habeas corpus petition is ripe for disposition.

The uncontested facts presented in the petition establish that Elashi

... was born in Gaza, Palestine, in 1955. . . . He resided in Gaza until shortly before the Isreali–Arab War of 1967, at which time he was sent to boarding school in Egypt. He remained in Egypt through completion of his bachelor's degree in 1977, when he first moved to the U.S. on a student visa.

. . .

In 1984, Petitioner briefly traveled abroad to marry his wife, a Jordanian citizen. . . . Together, they raised their five U.S. citizen children. . . .

Thus Petitioner has lived in the U.S. for over thirty years, last entering the U.S. in 1990 after a brief trip abroad.

(Habeas Corpus Petition, p. 5, ¶¶ 16–18)

The record also shows that not all of Elashi's time in the United States was lawful. He was required to depart voluntarily from the United States by December 4, 1985, but apparently did not do so. He was subsequently paroled into the United States on April 30, 1990.

In December of 2002 his parole was terminated and he was taken into federal custody as a result of numerous alleged violations of federal law. On October 6, 2006, Elashi was convicted of 1) Conspiracy to Violate the Export Administration Regulations and Libyan Sanctions Regulations, 2) (four counts of) Libyan Export Violations and Aiding and Abetting. 3) (three counts of) Syrian Export Violations and Aiding and Abetting, 4) (two counts of) False Statements and Aiding and Abetting, 5) Money Laundering and Aiding and Abetting, 6) Conspiracy to File Shipper's Export Declaration Forms and Aiding and Abetting, 7) Conspiracy to Deal in the Property of a Specially Designated Terrorist, 8) (ten counts of) Dealing in the Property of a Specially Designated Terrorist and Aiding and Abetting, 9) Conspiracy to Commit Money Laundering, and 10) (nine counts of) Money Laundering and Aiding and Abetting.

After completing his 84–month sentence, on January 22, 2009, Elashi was taken into custody by the Bureau of Immigration & Customs Enforcement pursuant to a final order of removal which he does not contest.

The only claim in Elashi's habeas petition is that his continued detention pending removal from this country is in violation of Title 8 U.S.C. § 1231(a)(6), which is also known as § 241(a)(6) of the Immigration and Nationality Act.

The United States Supreme Court has held that the Bureau of Immigration & Customs Enforcement is required to address the likelihood of one's deportation or removal only after an initial 6–month period of detention. *See Zadvydas v. Davis,* 533 U.S. 678, 701, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001)(detention of six months is presumed to be reasonable). The Court further explained that

[a]fter this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To

the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*, 533 U.S. at 702, 121 S.Ct. at 2505.

Elashi was taken into Immigration & Customs Enforcement custody on January 22, 2009. The presumptively reasonable 6–month period expired on July 22, 2009. Attached to Elashi's habeas corpus petition as exhibits are 283 pages of documents, most of which are copies of correspondence in furtherance of Elashi's attempt to effect his removal from this country. His efforts commenced on February 24, 2009, when Elashi's wife sent Elashi's passport to an Immigration & Customs Enforcement officer. Since that time Elashi's family members have made numerous unsuccessful attempts to obtain travel documents for him. Thus far Israel, Jordan, and Egypt have declined to issue travel documents in response to his family's requests.

By October of 2009, 14 countries, the United Nations High Commissioner for Refugees, and the Palestine Liberation Organization Mission had informed Elashi that they could not issue travel documents to him. (Habeas Corpus Petition, p. 10, ¶ 35) To this date Elashi "has been unsuccessful in obtaining travel documents from any of the 41 other countries from which he has sought permissions to enter." (Id., p. 15, ¶ 46)

Elashi highlights two specific problems he faces in his attempts to be removed to any Palestinian Territory or to Jordan. Elashi has provided substantial evidence indicating that

> a Palestinian, such as petitioner, who is not listed on the population registry, does not have an Isreali identification number, and has no immediate family

residing in the Palestinian Territories cannot be repatriated to the Territories. (Reply Brief, p. 4; Habeas Corpus Petition, p. 14, ¶ 45) Specifically with respect to the country of Jordan, its officials maintain that the issuance of any travel documents is contingent upon a showing that Elashi's passport will remain valid for 6 months from the date of his departure. (Reply Brief, p. 6) Elashi's passport will expire in May of this year. (Id.)

In stark contrast to the practical, definitive obstacles Elashi has documented, the Government attempts to establish the foreseeability of Elashi's removal by emphasizing the existence of ongoing discussions and meetings. Despite Elashi's unsuccessful attempts, the Government contends in its brief filed on January 10, 2010, that

> Petitioner has not shown that his removal is not reasonably foreseeable. Alternatively, if the Court concludes otherwise, Respondents respectfully ask the Court to allow them an additional 120 days to effect Petitioner's removal. If so allowed Respondents will report back to the Court on the status of Petitioner's removal on or before April 7, 2010.

(Opposition brief, p. 1) The Respondents specifically contend that

> higher level components of [Immigration & Customs Enforcement] were not involved in prior unsuccessful efforts to remove Elashi to Jordan. And routinely, [Immigration & Customs Enforcement's Travel Document Unit's] Officers must make several requests before Middle Eastern Embassies, such as Jordan's, will issue a transit visa and/or approval letter.

(Id., p. 6) The Respondents do not contest or respond to Elashi's contentions that Jordan requires Elashi to possess a passport valid for 6 months after departure, and that his passport will expire before that period.

With respect to the possibility that Elashi could be removed to the Palestinian Authority, Immigration & Customs Enforcement

recently sought the assistance of the Department of State ("DOS") on October 28, 2009, to facilitate Elashi's removal either to the Palestinian Authority, with a transit visa, or to Jordan to live with his wife.... Elashi's case has been elevated to the Interagency Working Group on removals, which is a committee of representatives from DOS, the department of Justice, and the Department of Homeland Security, that facilitates assistance in difficult removal cases.

(Id., pp. 7–8)

In the Respondents' most recent brief filed on February 16, 2010, they restate their position that

Elashi's removal remains reasonably foreseeable, especially given the recent involvement of the U.S. Department of State. Alternatively, should the Court conclude otherwise, Respondents respectfully ask to be allowed until April 7, 2010, to effect Elashi's removal from the United States.

(Brief in Response to Our Order of January 26, 2010, p. 1) However, according to the Government's own presentation of the facts, the Department of State has been involved with Elashi's case since October 28, 2009. Under the totality of the circumstances here, we question whether its involvement since then, for a period now of almost 5 months, may be fairly characterized as "recent."

The Government cites in its initial brief two decisions of the United States Court of Appeals for the Third Circuit. Only one of them is a published decision, and in neither of those cases was the petitioner a native of a Palestinian Territory. We further note that the published decision,

*United States v. Elashyi*, 554 F.3d 480 (5th Cir.2008), relates to Elashi's direct appeal of his conviction and it does not address any immigration issues whatsoever.

■ The Government's position, in essence, is that Elashi's removal remains reasonably foreseeable because attempts to effect his removal remain ongoing and there are conceivable avenues yet to be exhausted. However, in light of the fact that the best efforts of the Government and Elashi's family to this point have been unsuccessful, we are of the view that the Government is required to demonstrate the likelihood of not only the *existence* of untapped possibilities, but also of a probability of success in such possibilities.

We agree with the following reasoning expressed by the United States District Court for the Eastern District of Virginia in the case of *Hajbeh v. Loiselle, et al.*, 490 F.Supp.2d 689, 693 (E.D.Va.2007):

Although there is no evidence before the court indicating that respondents are dragging their feet on the removal effort, the government cannot continue to rely on claims of "best efforts" and promises that removal is just around the corner when they have no evidence to suggest that progress is being made.... Although "best efforts" and ongoing negotiations may have been convincing seven months ago when respondents submitted the first declaration from the [Immigration & Customs Enforcement] officer, at this stage, such showing is insufficient as "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." [quoting *Zadvydas v. Davis*, 533 U.S. 678, 702, 121 S.Ct. 2491, 2505, 150 L.Ed.2d 653 (2001)]. Petitioner has now been confined subsequent to a final order of

removal for nearly twenty-one months, exceeding the postremoval confinement of most cases cited in the parties' briefs . . ., suggesting that "what counts as the 'reasonably foreseeable future'" in this case is now exceedingly short.

The reasoning and conclusions in *Hajbeh* reflect those of the Honorable Yvette Kane in the case of *Abdel–Muhti v. Ashcroft*, 314 F.Supp.2d 418 (M.D.Pa.2004).

The Petitioner in *Abdel–Muhti*, like Elashi, was a Palestinian. A final order to remove him from this country was issued on September 25, 1995, but he was not apprehended and taken into custody for that removal until April 26, 2002. He filed his habeas corpus petition seeking release pending removal on November 2, 2002. He received an initial custody review on November 25, 2002. On June 2, 2003, his habeas petition was transferred to this court. A second custody review was held on November 25, 2003.

After reviewing the complicated politics involving Abdel-Muhti's repatriation to a Palestinian Territory and his efforts to effect his removal, both of which apply with equal force to Elashi, Judge Kane stated that

> [t]he lengthy history of Petitioner's efforts, made while in custody, and those of the [Bureau of Immigration & Customs Enforcement] to repatriate him to the West Bank, support his claim that he cannot be deported in the reasonably foreseeable future.

*Abdel–Muhti v. Ashcroft*, 314 F.Supp.2d, 418, 425 (M.D.Pa.2004). Judge Kane noted that at the time of her decision Abdel–Muhti had "been in custody since April 2002, and has been held approximately fifteen months past his presumptively reasonable period of detention without being removed." *Id.*

■ Although Elashi has not been in custody as long as Abdel-Muhti. The pre-

sumptively reasonable period to detain Elashi expired in August of 2009, and he has been held approximately 7 months beyond that date. However, in relation to Abdel–Muhti's case, it appears as though greater efforts have been made in a shorter time frame to effect Elashi's removal.

The supplemental briefing we required in our order of January 26, 2010, extended the Government's time to effect removal to within a single month of the date they sought to file a status report as an alternative form of relief. The Government's brief filed on February 16, 2010, cites no progress of any import. The only development cited is a scheduled meeting (scheduled for February 17, 2010, but postponed to a date not specified in the Government's brief) "of the Interagency Working Group on Removals," which consists solely of United States Government officials and at which Elashi's case was to have been discussed. Obviously, such a group does not have the authority, in and of itself, to remove Elashi.

We are of the view that the events discussed in the Respondents' most recent brief establish the lack of meaningful progress towards removing Elashi. We fail to see any merit in forestalling the relief to which Elashi is entitled pursuant to *Zadvydas, Hajbeh,* and *Abdel–Muhti*.

We will grant Elashi's habeas corpus petition because the Government has not rebutted Elashi's reasons to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. Elashi's petition for writ of habeas corpus (Document 1) is granted.

2. The Bureau of Immigration & Customs Enforcement shall, within 3

weeks after the date of this order, release Petitioner Bayan Elashi under reasonable conditions of supervised release as determined by the Bureau of Immigration & Customs Enforcement in accordance with the provisions of 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5.

3. Within thirty (30) days of the date of this Order, the Bureau of Immigration & Customs Enforcement shall report to this Court the fact of Petitioner's release and the conditions imposed on Petitioner's release.